This time we'll hear Gold v. Attorney General. Good morning. Good morning. May it please the court. My name is Ron Kuby. My colleague, Joel Rudin. We represent the appellate Rafael Golb. And this case presents three questions. The first is whether the forgery statute as construed by the district court's construction of the New York Court of Appeals is vague and overbroad. Second, whether the criminal impersonation statute which purported to cabin intended harbors or benefits to reputational injuries is vague and overbroad. And lastly, whether Shuttlesworth requires that the convictions for criminal impersonation be reversed for new trial. And I'd like to address them in that. Could you also tell us your position on what our review is in light of the Court of Appeals actions on these various questions and our obligations under AEDPA? Thank you, Judge Draghi. I think that there is a fundamental tension between the Supreme Court's First Amendment and vagueness jurisprudence on one hand, where you carve out the most space available to protect all forms of speech. And the Court's AEDPA jurisprudence on the other, which says that you will grant the most deference possible on habeas corpus. Even in First Amendment cases where the state is exercising its penultimate power, which is the power to actually put people in jail. So there's a real tension in terms of review. And I think the way that that tension can and should be resolved is to make very, very certain that the Court of Appeals actually reached the merits of the constitutional argument. And if you look at the Court of Appeals decision in Golb, there is no such confidence. You know, Brother Revelese here has argued consistently that the Court of Appeals decision was without constitutional dimension. And he has pointed to, and correctly, I think, the fact that no constitutional cases were cited. No constitutional amendments were mentioned. The forgery opinion is exactly two sentences. One, it quotes the statutory language. And the second sentence in the Court of Appeals says that Mr. Golb's conduct fell within that. Sotomayor, if we accept that the construction of the Court of Appeals on the direct appeal, not the reconsideration application, was a construction based on State law, there was a constitutional challenge raised. So isn't it implicit in their view that the narrowing supported affirmance of the conviction, that the State statute narrowing is a rejection of any constitutional argument, that they thought their narrow construction therefore avoided the constitutional question? I think it would be fairly inferable had they made some reference to some portion of the Constitution or even a State law case in their narrowing of criminal impersonation. They did not in any way narrow forgery. In fact, they sort of broadened it beyond what the prosecution had argued. No reference in any of the cases that they cited to any constitutional holdings, constitutional positions. How can we interpret the Court of Appeals as not dealing with a constitutional question when the appeal was on the basis of these constitutional questions, or at least in part, and the Court ruled as it did against you? Those were the issues. I mean, when a court says affirmed, it's rejecting the arguments that have been made. Yes. But as has been argued repeatedly by the prosecution in this case, the complete and utter reliance in dealing with the criminal impersonation statute and the forgery statute, the complete and utter reliance exclusively on State law, coupled with their very explicit constitutional determination when they declared 240.30 sub 1 unconstitutional under the First Amendment, suggests they did not reach the constitutional question. I'm still having trouble with that. The argument is made it's unconstitutional, and the State court says, no, no, you're construing it wrong. It has a narrower construction, and on that ground we affirm. That means because we've construed it more narrowly, there's no constitutional problem. Why isn't that the way to look at this? Because they never said, because we've construed it narrowly, there's no constitutional problem. But they could not affirm in the presence of a constitutional problem. They could also not affirm in the presence of their view regarding the proper scope of State law without reference to constitutional principles. And that's what they wrote. Sure, we can try to read into what they actually considered, but that is what they wrote. And I think in a — Then we go to the next point, which is you sought reconsideration. And at least part of the argument for reconsideration was, look, the Supreme Court has said in Shuttlesworth that constitutionally you're obliged to do X. And they said, we're not reconsidering it. It isn't implicit in that, that we already considered the constitutional argument and found it lacking. That would be true if a motion to deny a re-argument was a merits determination. But under New York State law itself, you only get a merits determination when, in fact, the court has agreed to re-argument. Then they either affirm or reject on the merits. By the function of New York State law alone, it says these are not merits determinations. So with all due respect, you can't make that inference. I'd like to sort of turn to the forgery statute, because under any standard, obviously it's so much easier if we simply apply basic vagueness principles. But even if we want to — even if I am saying this is contrary to well-established Supreme Court law, it clearly — it clearly is. Because the forgery statute, as construed — and, again, I've been arguing to courts for the better part of a decade that they should perform a rescue operation on this statute. But as construed, it is any person who makes a false written instrument — and clearly saying you're somebody you're not is a false written instrument — with intent to deceive is guilty of the crime of forgery. There's no requirement in the statute as to who must be deceived or how. There's no injury benefit or harm analysis as to nobody has to be injured. All you have to do is intent to deceive. You don't have to intend any harm beyond that simple deception. And that plainly and clearly fails the second prong of the vagueness test, because it provides no discretion as to which forgeries, which false writings are going to be criminalized and those that are not. In our brief, we cite hundreds of examples, everything from impersonating the Koch brothers to Joel Osteen, Republicans pretending to be Democrats, Democrats pretending to be Republicans. I mean, I think half of President Trump's Twitter followers by name are, in fact, bots created for the purpose of magnifying the message. So this is not a hypothetical parade of horribles. This is what's going on among millions, if not billions, of people on social media every day. And I know that this Court, or at least two members of this Court, have disagreed in the past as to the proper — how much vagueness has to be allowed before a statute is declared vague. But at a minimum, a statute must at least require a deceit intended to cause harm, at a minimum. And that statute — this statute, as construed, does not require that intent. And it — Let me ask you about this. Since the State Court did not narrow this statute, then the only argument, the only challenge it had before it was the constitutional challenge, why doesn't the Harrington presumption apply to its rejection of your forgery challenge? Because it's contrary to existing, well-settled Supreme Court law. Well, that's a question about whether or not it acted in violation of well-established law, which I'll get to in a minute. But you would agree that we review its rejection of your forgery challenge with epidefrance. And we would have to find that they failed to apply clearly established Supreme Court precedent. Well, if you reject the arguments that I had made before, which — No, no. That argument dealt with the other statute, which they narrowed — they gave a narrower construction to on State law grounds. Here, there was only one argument. It was rejected. It seems to me we do have to review their decision with — according to ADPA. Judge, I — again, I think that doing that in this First Amendment context based on two sentences written by the Court of Appeals, the first sentence quoting the statute and the second sentence saying his conduct fell within the statute — What other ground did they — could they have ruled on other than that it wasn't constitutionally defective? The very State law grounds that they appeared to invoke. They narrowed this statute. Okay. All right. In any event, the Supreme Court precedent does say that facial oath for breath challenges succeed where a statute prohibits a substantial amount of protected speech. How do you satisfy that here? Because it — I mean, we don't look to whether there are some possibilities for impermissible application on over-breath. We look — facial over-breath, anyway. We look to whether it prohibits a substantial amount of protected speech. This statute, as written and construed, would — has the potential in the discretion of the prosecution to criminalize almost all activity that's going on on the Internet where people consistently and persistently write under names other than their own. Could you point us to any New York case where the statute has been applied to — in circumstances other than to obtain a material advantage or to harm professional reputation or something that would not raise those concerns? Only this one? And I respect the fact that — Well, at least in some circumstances here, the district court thought the only theory pursued was reputational harm. Right. But that's not — that's not attached to the construction of the forgery statute. That's only attached to the construction of the criminal impersonation statute. I must not be being clear. You have to show us, though, that the statute affects a substantial amount of protected speech, not could affect protected speech, that it's got this substantiality problem. Well — It affects any writing of a book under a nom de plume, under a name that's not the — it's expressly defined in the definitions for which purports to be an authentic creation of its ostensible maker, but which is not, either because the ostensible maker is fictitious or because, if real, he did not authorize it. That's correct. As to any writing, if one publishes a book under, I mean, the Federalist Papers, Publius — Letters of Obscure Men, which celebrates its 500th anniversary and helped — Any intent to deceive? Yes. In those circumstances is located where? Well, the intent to deceive in Letters of Obscure — In the Federalist Papers, for instance. In the Federalist Papers, they were designed to deceive the reader as to the actual author of the Federalist Papers. No, not so. No one thought Publius, the Roman, you know, was the author of these papers. Okay. I'll give you another example. I don't think that's a good example. Well, what about J.K. Rowling, who decided that, in her post-Harry Potter career, she wanted to try a book that stood on its own merits, not attached to the name J.K. Rowling, and she wrote it under the name Peter Galbraith, who presumably is a real person, although that's not required under the forgery statute. Her book got great critical reviews as Peter Galbraith, but nobody bought it until she was outed, if you will, as J.K. Rowling. Then everybody bought it. Did she intend to deceive by writing the book under the name Peter Galbraith? She most certainly did. She wanted her work, as she explained, to stand on its own merits, detached from the fame of her name. So did Stephen King when he wrote the Bachman books. So does every writer. A whole body of feminist 18th and 19th century literature was written under the name, What evidence is there that New York applies this statute to those kinds of circumstances? Pardon me? What evidence is there that New York has ever applied this statute that broadly? The evidence is this case. That's what they did. And I appreciate the fact that the DA's office may contend that they don't need restrictions because they do things the right way. And I appreciate that, except in this case. But there are people out there who may not do things the right way, and they do need to be restricted, and that's the problem with vagueness. It's not we simply like and trust them. It's we, as a constitutional matter, can't hand them this boundless discretion. Thank you. Thank you. You've reserved rebuttal. Yes, indeed. Thank you. Good morning. May it please the Court. I'm Vincent Revelisi from the New York County District Attorney, representing the Attorney General. If I may start on the first question that Your Honor's asked Mr. Kuby about the AEDPA deference. I would like to try to persuade Your Honor from the questions that you were asking Mr. Kuby. The New York Court of Appeals did not modify the statute expressly because it found a constitutional error if it didn't. It just rejected the constitutional arguments without discussion. So it's really not clear from the decision that they actually found the statute would have been unconstitutional without the modification. Is it your position then that we do de novo review? No. No, no, no. They rejected his argument that there was a constitutional problem because he made the argument, and Judge Littman dissented saying that the statutes were unconstitutional. The Court did not find the statutes unconstitutional. It didn't say that it— You said they didn't find the statutes unconstitutional. The question is whether they reached the merits of that decision. Now, you can't both tell us they didn't and then say, but apply AEDPA deference. I mean, we apply AEDPA deference to their determination of a constitutional challenge. And if the constitutional— What's your position? The constitutional challenge that Mr. Kuby made in the appeals brief in the Court of Appeals was the argument he's making now. The New York Court of Appeals did not agree with him by taking that argument and discussing it and saying anything about it. It just did not do what he asked. And instead— We read the decision. We understand that. The suggestion I made to Mr. Kuby was that they couldn't avoid a constitutional question unless they construed their statute in a way that what they were saying was we've construed it more narrowly under State law, and now you have no constitutional claim. But unless that's what they were saying, I'm not sure how you can claim AEDPA deference. Well, because if he's presenting the constitutional claim and they don't agree with him and they don't do what he asks them to do, isn't that a rejection? As Judge LaValle was suggesting before, that the argument is made and the argument is not acted upon by the Court, then it's been rejected. And if you look at the dissent of the chief judge, he did say these statutes were unconstitutional. So you are saying that they rejected the constitution— They did. —on its merits. They did. They did. But I'm not saying—what I'm trying to persuade, Your Honor, is that they didn't modify the statute because of the constitutional problem. Whatever reason they modified the statute, they narrowed the statute. And when reconsideration was sought on Shuttlesworth grounds, that was denied. Yes. Now, when a certiorari court denies reconsideration, I don't see where that is a decision on the merits. Then counsel went to—was remanded, I think, by the Court of Appeals. They went to the trial court and the appellate division and they, I think, assumed that the Court of Appeals had decided that question. But I really don't see it. How did the Court of Appeals decide anything on the merits by denying reconsideration of the constitutional claim that Mr. Gold was convicted under a statute that had been narrowed in such a way that might have made some of his convictions nonviable? Well, I don't think the reconsideration motion by itself tells you a lot about whether they made a merits decision. It doesn't say anything. I think that the merits decision before is because the defense made all of the arguments in their brief and it was rejected. But what—the Court did what it did. It narrowed the impersonation statute. That raises a question which was presented immediately to the Court of Appeals as to whether under Shuttlesworth some or all of Mr. Gold's convictions under the impersonation statute were no longer viable. That issue just arose the day that the Court of Appeals handed down its decision. But that's only if the narrowing were done because of a perceived constitutional defect.  Because Shuttlesworth said that. Do you think it's okay under the Federal Constitution to convict people under a statute that doesn't describe their crime? No, Shuttlesworth said that when there's a constitutional error that requires a change in the statute, that that's the problem when the State doesn't make sure that the person was convicted under the constitutional version of the statute. New York didn't say this was an unconstitutional statute. They just made a change in New York law. Here's the problem, though, that I have. In the panel decision on direct appeal in People v. Gall, after narrowing the statute, what the majority said was, here there was sufficient evidence to support the jury's finding that defendants' emails impersonating the three individuals was more than a prank and that he acted with intent to do real harm. In other words, they did sufficiency analysis. They did. By contrast, the Shuttlesworth standard is different. The Shuttlesworth standard has defined that the overbroad construction could not have affected the jury's determination. I don't see that that analysis was done on the first appeal, and I don't know how we would conclude that the rejection of rehearing alone is enough to have done it. Help me out. Well, on the first appeal, they were saying that the evidence proved that he was guilty of the reputational intent. That there was sufficient evidence to do that. That's a different inquiry from whether we can say conclusively that there was no possibility that an overbroad construction informed their decision. It's not the Shuttlesworth analysis sufficiency. But all of that has to be based upon a finding that the initial statute was unconstitutional. It seems to me that the argument was made to the Court of Appeals, in the appeal to the Court of Appeals, without considering the petition for rehearing, that the unconstitutionality requires that the conviction be vacated. And that argument presents to the Court of Appeals the entire subject of, is it unconstitutional, and if so, what must be done? It seems to me implicit in that is the Shuttlesworth. It may not have been argued until the Court of Appeals said what it said, and then it was raised in the petition for hearing, but it's implicitly in the initial appeal. So it seems to me that in the initial decision of the Court of Appeals, it didn't explain things all that well, and some things it didn't explain at all, but the Shuttlesworth business was implicitly involved in the constitutional issue. And it seems to me that the Court of Appeals resolved it on the merits in that. Right, by rejecting the defense argument without discussion. Rejecting the argument that the convictions need to be vacated because of the overbreadth of the statute. And the problem for us is to say simply, using the Shuttlesworth standard, can that decision stand with respect to the impersonation statute? Is it harmless beyond reasonable doubt to narrow the criminal impersonation statute the way it was with respect to the facts of his case? Well, naturally, the district judge thought so with respect to most of the counts, 17 out of 19 of the counts, and we would agree. But I still would like to try to make a little bit of a pitch for the fact that the New York Court of Appeals did not ever say that the statute was unconstitutional without the modification. Well, you know, you have this argument that Shuttlesworth simply has no role unless the state court relied on a constitutional ground. But the Alabama state court in Shuttlesworth didn't say that it was relying on a constitutional ground, didn't mention the Constitution at all. So it's very hard to reconcile your argument with Shuttlesworth itself when the highest court of Alabama did not rely on the Constitution in narrowing the statute. But the United States Supreme Court said that it was the constitutional defect that was the reason for the need for sending it back. How does that make sense? Do you think due process allows someone to be convicted on anything other than what the statute prohibits? So once the state court narrows the statute, whether by relying on text or on constitutional defects or whatever, once it narrows the statute, isn't it only constitutionally permissible to convict a person of that narrowed version of the statute? Well, as far as whether there's a federal problem... Yes, the federal problem is that you can only be convicted of something that is a crime. But he was. Initially he was convicted of what was charged. It was instructed to the jury according to the elements of the crime. The jury found him guilty and the New York Court of Appeals then said... And that's the Shuttlesworth problem. The court was satisfied there was sufficient evidence to convict him under the narrowed theory, but it didn't go to the jury on the narrowed theory. So doesn't that raise the concern whether we can say, with the requisite degree of certainty, that the broader version that they were given didn't infect the verdict? Well, because it's really just a question of jury instructions. It's whether the jury is told properly what the element of the crime is, so that it would at least become a harmlessness question. But I think that the point that I'm not able to convince Your Honor of is that the Shuttlesworth requires that there actually be a constitutional defect in the first place. If there was no constitutional defect in the first place, it's just New York saying that New York is going to require a little bit more, but that there was no constitutional problem in the initial conviction, so it wouldn't be a federal question to be addressed. And if they're saying, as a matter of New York law, it would have been good to have this requirement for reputational injury, but we have it here, they're just making sure that they have enough to prove what he was guilty of. At the trial itself, he was tried for a constitutional violation. In other words, it was nothing unconstitutional about the crime. He was convicted of it. You are cross-appealing the court's decision to reverse the convictions on accounts 33 and 37, which are two emails in which the defendant basically is disparaging his father. It's very difficult to tell why he sent it. How can anyone say with confidence that he sent that for the purpose of injuring somebody's reputation? His father's? That doesn't make any sense. In those cases, it's part of the overall combined practice that he was doing with all of his emails, that you would have to look at all of the evidence as to what his intent was. Those emails by themselves wouldn't have been as clear, and that's why we didn't make the harmlessness argument. There's a big difference between those emails and the Schiffman emails, where the Schiffman emails could not conceivably have been intended otherwise than to do serious harm to Schiffman. There's a big difference between them. Frankly, I don't really see why you struggle so hard to defend some extremely dubious accounts here, when it seems to me you should be focusing your attention on defending the really seriously harmful Schiffman email convictions. I agree. The reason that those accounts were cross-appealed wasn't because of those two counts being important, but because of the Shuttlesworth claim that in our position the Shuttlesworth applies to all 19 counts, that we felt that because there was no constitutional problem with the initial statute, that the Shuttlesworth claim does not apply. So that's the reason for appealing those two counts. They were part of that 19 counts. The important argument for you to be making is with respect to the Schiffman emails, that when you look at the text of those emails and the words that they were putting in Schiffman's mouth, acknowledging and treating as a long-ago peccadillo his having plagiarized from Father Gold, and then asking that nobody, asking the dean, the provost, and all of his co-professors and so forth, don't let anybody know about this, don't tell any students, don't talk about it, it would damage my reputation. That can't be seen as having any other intention than to do serious harm to Schiffman's not only reputation,  And no reasonable jury instructed in any other way would have found him not guilty under those counts by any standard. And that's true. So that would be harmless regardless of any of the other findings in this case. And just let me add at the end that as to the four jury counts, that there was no prosecution of mere use of pseudonyms here. It was only the use of actual other people's names who did not consent to the emails. And we're not attempting to stop parody or satire. And the jury was so instructed. So those counts should not be vague. Here the statute, the four jury statute, it explicitly in its definitions applies to any circumstance in which one writes anything under a name other than one's own, including fictitious names. That if I simply publish something on the internet or wherever using a fictitious name, how can that be defended as within the Constitution? Well, in New York it wouldn't be a crime to use a fictitious name if there was no intent to deceive. But I mean there is an intent to deceive if you're intending not be known that you are the author of the thing. If you are publishing it in a fictitious name because you don't want people to know, you know, here I am a judge of the Second Circuit. I don't want people to know that it's me who's writing this thing that I put on the internet. That's an intent to deceive. In this case in particular, that Goldberg's jury was instructed that he had to be intending to deceive the people as to whether he was that particular real person impersonating that person. No, but I'm talking about the statute. I'm not talking about its application to these facts. I'm talking about the overbreadth of the statute. I mean I don't think that he can raise that argument here when he's clearly not aggrieved by that. It hasn't been used to prosecute people for just publishing a book with a fake name. And I can't imagine that it ever would be, and I don't believe that the statute would prove that. Isn't the law on the First Amendment, isn't the law to the effect that a statute of that sort is unconstitutional and cannot be used at all? If the statute were actually to affect, to make it impossible to legally write a book under a different name, then it would be, but that's not how the statute's ever been used. It almost seems to me that you're arguing that the state didn't narrow the statute, the forgery statute, but that in fact it has to be narrowed to be constitutional. Is that what you're arguing? No, actually I wasn't. Do you think that this statute can be applied? I mean we've given you many examples and circumstances without an intent to injure or benefit materially or something that plus that was found with respect to the criminal impersonation statute. Well, there is at least the intent to deceive. Yeah, but the intent to deceive arises in some of the circumstances that your adversary and members of the panel have put forth to you that you say wouldn't properly come within the statute. There would be an intent to deceive. I would have to say at least that it wouldn't be a substantial overbreath, not enough to require that it be unconstitutional. Perhaps the answer you're looking for is that when the word deceive is used in series with defraud and injure, there's the visible intent to read deceive as having a tortious element to it, that there's harm. And if I read a book written by Mr. Jones and it turns out it was written by Mr. Smith, I may be deceived, but I'm not being deceived in the sense suggested by the series of defraud, deceive, or injure. Because the deception is additional, an additional element besides the actual use of the different name. Yes, the deception has to be to somebody's harm. Right. That's not harm if I'm reading a book written by somebody. Right, I would agree with that, Judge. Thank you, Your Honors. We'll hear about it. Are you ready? Well, Judge, I agree that following, and I, Latin, right? Es sugem generis? Your position would be right. You read deceive in, you know, in context of the other elements. I've been asking courts to do that, again, for close to 10 years. And each time, each time they say no, no, no, intent to deceive is enough, the court of appeals. Again, two sentences. They made it very clear that they required no additional element. The court below said no additional element. Well, the question is whether having the word deceive in series with defraud and injure, preceded by defraud and followed by injure, is not already, does not already make inherent in the wording that there has to be some tortious or malignant consequence to the deception. Well, let's have that trial. Let's have that trial, then, on retrial, because that's not how the jury was instructed. The jury— Let's assume for a moment, and I know you disagree with this, but assume for a moment that the district judge is right that on all but two counts of conviction, the jury had to have found an intent to either defraud to get some benefit for his father or to injure by injuring reputation. Why would we reverse those convictions when we know that the jury would have had to have made the findings that satisfied the not overly broad injury and defraud prongs of the statute? Well, I think there's—I'm hearing two questions there.  The first one is that if this is vague as to the second prong, it doesn't provide any guidance, and this does implicate First Amendment concerns, then it is vague even under citia moralis because there is no requirement of harm in the statute. If the second question, which is, I believe, what Judge LaValle was saying, there is no conceivable interpretation other than Raphael Gold intended to harm Schiffman's reputation, and I submit to you that is not correct. There is sufficient evidence, certainly, but Raphael Gold testified, and he said, my goal was not to harm Schiffman's reputation. My goal was to inform people of the truth, to stir up controversy, to talk about the way the monopolists had excluded contrary points of view. There were his personal e-mails to his brother in which he specifically said, and we have no reason to lie, my goal was not to harm Schiffman's reputation. My goal was to address— You may have had other intentions beside it, but there's no way one can send — I don't understand what your answer is to the proposition. When one sends an e-mail like that purporting to be Schiffman saying, first of all, acknowledging, admitting his plagiarism, and then saying everybody's got to hush this up, nobody can talk about it because it would harm me, there's no way one can contemplate that without recognizing that it's going to be harmful to Schiffman's reputation, at least unless the deception is revealed. And so, I mean, if I shoot a gun out there like this in that direction just because my purpose is just to — because I want to enjoy the pleasure of shooting the gun, it's still — I have to contemplate that it's going to cause the harm. And that has to be — Except if we had had the trial that told us of the ever-expanding universe of anything that in fact the court of appeals takes this circle of reputational injury, we could have focused our defense on that. For example, we could have brought in experts on academic practices who would have testified as some of the lay witnesses did. Nobody took this seriously. Nobody took this seriously for a second. Nobody even — There was an investigation started at NYU. There were proceedings that were — There were no proceedings. The investigation, according to the record, consisted simply of Dean Stimson acknowledging that this is sort of weird, this doesn't seem like it comes from Schiffman, and asking Schiffman, did you write this? And he said no. Now, it's true that Larry Schiffman, because this has been a problem that has plagued him not since Norman Gold, but since Avi Katz, the Hararetz journalist, accused him publicly of plagiarism, he decided to sit down and sort of compose his opus explaining himself. But that was entirely his decision. He never testified to any reputational injury. There was no evidence of any reputational injury. And in fact, although it's post-hope, but it's not de ors the record, he said he got a big promotion out of it. It didn't bother him at all. So if we could have a trial where the issue is not the lowest common denominator, did Mr. Gold intend to be annoying, which was what had to be found under 24030 sub 1, if you act with intent to be annoying and you engage in the likelihood of conduct that's likely to annoy, you're guilty. And since annoying is the least common denominator of all of those counts as a harm, there's no indication that the jury undertook the inquiry that it needed to take. We couldn't focus our defense on what is now apparently the one area that the Court of Appeals landed on. Certainly the prosecution didn't focus on that. They talked about stirring up controversy, creating trouble, dragging another person into a dispute, influencing an academic debate, as well as harassing, annoying. All of those were all the words in summation, in opening statements. And I was begging the Court, please, just tell me here. Day of trial, would somebody please tell me what is the harm that I'm defending against? What is the harm? And, of course, they refused to do so. So we should have the opportunity. We must have that opportunity, consistent with due process, to defend that case. Thank you. Thank you. Thank you. Both will reserve decision.